## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JON PARRY,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; and BANK OF THE WEST,<br><br>Defendants. | **Case No.:** 0:20-cv-02434<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

NOW COMES Plaintiff Jon Parry ("Plaintiff") by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendant Experian Information Solutions, Inc. ("Experian"), Defendant Equifax Information Services, LLC ("Equifax"), and Defendant Bank of the West:

### INTRODUCTION

1.      Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Defendants Experian and Equifax, each a consumer reporting agency, for reporting inaccurate information on Plaintiff's credit reports.

2.      Plaintiff's Complaint also alleges violations of the FCRA, against Defendant Bank of the West for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Defendants Experian and Equifax.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction because this action arises out of violations of federal law 28 U.S.C. §§ 1331.  Jurisdiction is also proper pursuant to 15 U.S.C. 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4.      Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transacts business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

5.      Plaintiff Jon Parry is a natural person residing in the city of Inver Grove Heights in Dakota County, Minnesota.

6.      Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

7.      Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 U.S.C. 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.     Defendant Equifax is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of *consumer reports*, as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

9.     Defendant Bank of the West is a financial institution engaged in the business of giving credit and collecting debt. Bank of the West is also a *furnisher*, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Bank of the West is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Bank of the West's principal place of business is located at 180 Montgomery Street San Francisco, CA 94104. Bank of the West can be served through its agent for service of process, CT Corporation System Inc. located at 1010 Dale Street North, Saint Paul, Minnesota 55117.

10.    Upon information and belief, Defendant Experian, Equifax, and non-party TransUnion, (referenced together as "credit reporting agencies" or "CRAs") disburse consumer reports to third parties under contract for monetary compensation.

11.    At all relevant times, Defendants Experian, Equifax, and Bank of the West acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12.     Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

13.     Defendants Experian and Equifax report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

14.     Defendants Experian and Equifax credit reports generally contain the following information: (i) *Header/Identifying Information*: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) *Tradeline Information*: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) *Public Record Information*: this section typically includes public record information, such as bankruptcy filings; and (iv) *Credit Inquiries*: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

15.     Defendants Experian and Equifax gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

16.     The information reported by Defendants Experian and Equifax contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

17.     The majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

18.     These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

19.     FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

20.     Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

21.     The more severe, recent, and frequent late payments are the greater the harm to the FICO Score.

22.     In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

23.     Defendants Experian and Equifax obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of her consumer credit report, as well as the individuals account tradelines.

24.     Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in the individual account tradelines.

25.     Defendants Experian and Equifax are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

26.     Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendant from furnishers of account/tradeline information.

27.     Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts even if that information ignores or contradicts information already known by Defendants, information provided by furnishers of account/tradeline information, and/or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

28.     Defendants are on continued notice of its inadequate post-bankruptcy reporting procedures, including inaccurate balances, and account and payment statuses,

through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

29.     On or February 24, 2020, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Minnesota (St. Paul), case number no. 20-30495.

30.     There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "nondischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

31.     Plaintiff was discharged from his Chapter 7 bankruptcy on or about May 27, 2020.

32.     Upon information and belief following Plaintiff's Chapter 7 Bankruptcy, Defendants prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge.

33.     Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

34.     For accounts included in Plaintiff's Chapter 7 Bankruptcy, Defendants are generally required to report the status of these debts as discharged through bankruptcy,

unless the furnishers provide information showing that a debt was excludable from discharge.

35.     Nevertheless, Defendants continued to report inaccurate consumer information on credit reports, instead of accurately reporting the status of pre-petition debts as included in or discharged in Chapter 7 Bankruptcy with $0 balances.

36.     Following Plaintiff's bankruptcy discharge, Plaintiff obtained copies of his Experian, Equifax, and non-party Trans Union credit reports to ensure his credit account tradelines and bankruptcy were being reported accurately.

37.     Upon review, Plaintiff discovered that Experian reported his Bank of the West Account ("Bank of the West Account 1"), opened in August of 2019, as discharged in bankruptcy, with a high balance of $9,253.

38.     However, Experian reported the Bank of the West Account ("Bank of the West Account 2") in a separate second tradeline as of July 2020 on Plaintiff's credit report.

39.     Plaintiff did not have two Bank of the West accounts.

40.     Experian reported the Bank of the West Account 2 with a Status of "Account charged off. $9,291 written off," an owed Balance of $9,323, and a "CO" in July 2020 of the payment history. Experian did not include any account status reflecting Plaintiff's bankruptcy.

41.     "CO" means Charge Off.

42.     The status of Charge Off in the credit reporting industry means that a debt may still be owed, especially where as here, the tradelines do not include bankruptcy

coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account.

43.     Experian's reporting of the Bank of the West 2 Account was inaccurate.

44.     Upon information and belief, the Bank of the West Account 1 and the Bank of the West Account 2 (collectively the "Bank of the West Account") actually refer to a single account that Plaintiff opened in August 2019 and was discharged in his bankruptcy.

45.     Experian reported duplicates of the Bank of the West Account, one as a charge off and one as discharged in bankruptcy.

46.     Notably, the other national consumer reporting agencies, Defendant Equifax and non-party Trans Union, did not report duplicate tradelines, or report charge-offs with a balance and no accompanying bankruptcy coding such as included in and/or discharged in bankruptcy.

47.     Plaintiff also discovered that Equifax was reporting Bank of the West Account, opened in August 2019, inaccurately.

48.     Equifax reported the Bank of the West Account with a Status of "Over 120 Past Due", an owed Balance of $9,253, a Past Due balance of $5,365, and a Scheduled Payment Amount of $1,569, despite the account having been included in bankruptcy and discharged on May 19, 2020.

49.     In the Historical Account Information section, Equifax also reported that Plaintiff owed $9,253 and $5,365 past due in July 2020, which was after Plaintiff's Chapter 7 discharge.

50.     Defendants inaccurately reported this information, e.g., that Plaintiff owes money on discharged Accounts, and also reports inaccurate statuses of these accounts, thereby damaging his credit.

51.     On or about September 15, 2020, Plaintiff sent a letter to Experian disputing its inaccurate reporting of the Bank of the West 2 Account.

52.     The letter specifically advised that Plaintiff never opened a second Bank of the West Account and that the only Bank of the West Account he had ever opened had was included in bankruptcy.

53.     Upon information and belief, Experian, forwarded Plaintiff's disputes to the furnisher Bank of the West.

54.     On or about October 22, 2020, Experian responded to Plaintiff's dispute letter.

55.     Experian did not correct the inaccurate information.

56.     Experian did not investigate Plaintiff's dispute and merely forwarded an automated dispute form to Bank of the West. Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by Experian through Plaintiff's reported payment history regarding on the Account, Experian merely parroted information furnished by Bank of the West despite awareness that the information was factually inaccurate and conflicted with information known by Experian.

57.     Bank of the West failed to conduct a reasonable investigation resulting in it continuing to furnish inaccurate data to Experian.

58.     Non-party TransUnion correctly reported a single Bank of the West Account as discharged in bankruptcy with no balance owed.

59.     Defendants inaccurately report the status of these debts, even though the debts are in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

60.     As a result of Defendants' conduct, Plaintiff has sustained actual damages including but not limited to, embarrassment, anguish, and emotional and mental pain.

61.     Defendants' conduct exacerbated Plaintiff's frustration during the already stressful post-bankruptcy period by hindering Plaintiff's ability to rebuild Plaintiff's credit.

62.     Upon information and belief, had Defendant Equifax and Trans Union accurately reported the Account as a positive account with a positive payment history, Plaintiff's credit score would have been better.

63.     Upon information and belief, Plaintiff applied for and was denied a loan from Capital One due to Defendants' inaccurate reporting which was published to Capital One in their review of Plaintiff's application.

<u>**COUNT I**</u>
**Defendants Experian and Equifax**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq.*)**

64.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

65.     The FCRA requires credit reporting agencies, like Experian and Equifax to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

66.     Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and by also failing to report accurate information when placed on notice that the information Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, or reasonably available to Defendants.

67.     Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

68.     Upon information and belief, Defendants Experian and Equifax regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

69.     Upon information and belief, Defendants Experian and Equifax voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge.

70.    The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of those orders upon certain accounts, namely, the status of accounts that have been charged-off and sold or transferred prior to the consumer's bankruptcy.

71.    Defendants reports the status of these accounts as "charged off" or "written off" and includes the corresponding balance, and at times late or past due payment statuses, even though these accounts are discharged in bankruptcy and there is no liability or balance owed by Plaintiff.

72.    Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

73.    Defendants Experian and Equifax inaccurately reported Plaintiff's discharged Bank of the West Account as Charged Off, with an a Past Due and an owed Balance.  Defendants fail to accurately report that there is no liability for these debts and that these debts were included in and/or discharged in bankruptcy.

74.    Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that were charged off and sold or transferred prior to the consumer's bankruptcy.

75.    Consequently, Defendants routinely report inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the

accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

76.    Defendants knew or should have known of its obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants were on notice of their unreasonable procedures.

77.    Defendants have obtained or has available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

78.    Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of his rights under the FCRA.

79.    Defendants violate 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure. Defendants allow furnishers like Bank of the West to report tradelines that are demonstrably inaccurate and outdated on the face of the Plaintiff's consumer disclosure. For instance, Defendants allows furnishers to report the status of debts arising prior to the date of a consumer's bankruptcy as charged-off, with a corresponding balance, and/or by omitting information that the account was included in bankruptcy, even though the debt arose prior to the date the consumer's bankruptcy and was discharged.

80.     Additionally, Defendant Experian reports itself or allows second/duplicate tradelines to be reported containing the inaccuracies described herein.

81.     Defendants possesses information from which they know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

82.     Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

83.     Defendants' inaccurate reporting damaged Plaintiff's creditworthiness and caused damages as described herein.

84.     Defendants are a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff.

85.     Consequently, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

86.     Consequently, Defendants is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

87.     In addition to the foregoing, Defendant Experian additionally violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Bank of the West account.

88.     Even after Plaintiff notified Experian of the inaccurate information it included in Plaintiff's credit file, Experian continued to inaccurately report the discharged Bank of the West Account as Charged Off, with a Past Due and owed Balance.

89.     When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information or delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

90.     When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

91.     Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

92.     Defendant Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

i.      Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

ii.     Failing to consider all relevant information while investigating Plaintiff's dispute.

iii.      Failing to include all relevant information when notifying Bank of the West
          of Plaintiff's dispute.

93.     Instead of reasonably reinvestigating Plaintiff's dispute, Defendant
Experian "verified" the tradeline was accurate and continued to report the discharged
Account as Charged Off, with an a Past Due and owed Balance, even though Experian
independently knew that the Bank of the West debt was discharged and had a $0 balance.

94.     Defendants' acts, as described herein, were done willfully and knowingly.

95.     As a result of the foregoing violations of the FCRA, Defendants are liable
to Plaintiff for actual damages, statutory damages, attorneys' fees and costs, as described
herein and as allowable by law.

## COUNT II
### Defendant Bank of the West
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

96.     Plaintiff incorporates by reference all the above paragraphs of this
Complaint as though fully stated herein.

97.     The FCRA requires that furnishers of information like Bank of the
Westconduct an investigation with respect to disputed information, review all relevant
information, and report the results of the investigation to the credit reporting agency. If
the investigation reveals the information is incomplete or inaccurate, report those results
to all credit reporting agencies to which the furnisher has provided the inaccurate
information.

98.     Bank of the West knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Bank of the West obtained or had available substantial written materials that apprised them of its duties under the FCRA. Despite knowing these legal obligations, Bank of the West acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

99.     Plaintiff disputed the Bank of the West tradeline through national CRA Defendant Experian.

100.    Thereafter, Experian forwarded Plaintiff's dispute to Bank of the West, notifying Bank of the West that Plaintiff was disputing the information it had furnished about the Bank of the West Account.

101.    Bank of the West received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

102.    Bank of the West continues to furnish inaccurate information about Plaintiff to all three CRAs, even though Bank of the West possessed all relevant information about the Bank of the West Account and the inaccuracy that Plaintiff disputed.

103.    The inaccurate Bank of the West account materially and adversely affects Plaintiff's credit standing.

104.    On at least one occasion within the past two years, by example only and without limitations, Defendant Bank of the West violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian.

105.    Bank of the West violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

a.    Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

b.    Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

c.    Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d.    Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

e.    Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

f.    Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the

consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g.     Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

106.   Bank of the West unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

107.   Bank of the West is a direct and proximate cause, as well as substantial factors in causing damage and harm to Plaintiff.

108.   Consequently, Bank of the West is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Jon Parry respectfully requests judgment be entered against Defendants for the following:

A.     Declaratory judgment that Defendants violated the FCRA;

B.     Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.     Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.      Awarding Plaintiff any pre-judgment and post-judgment interest as may be

        allowed under the law; and

G.      Any other relief that this Court deems appropriate.

## **<u>JURY DEMAND</u>**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial

by jury of all issues triable by jury.


Respectfully submitted this 1st day of December, 2020.


                                        *<u>s/Jenna Dakroub</u>*
                                        Jenna Dakroub
                                        Bar Number: 0401650
                                        *Attorney for Plaintiff, Jon Parry*
                                        **Price Law Group, APC**
                                        8245 N. 85th Way
                                        Scottsdale, AZ 85258
                                        Telephone: (818) 600-5513
                                        Email:  jenna@pricelawgroup.com